* * * * * * * * * * *
The Full Commission reviewed the prior Opinion and Award, based upon the record of the proceedings before the Deputy Commissioner and the briefs and oral argument before the Full Commission. The appealing party has not shown good grounds to reconsider the evidence; receive further evidence or rehear the parties or their representatives; or amend the Opinion and Award. Accordingly, the Full Commission affirms the Opinion and Award of the Deputy Commissioner, with minor modifications.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in a Pre-Trial Agreement and at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. All parties are properly before the Industrial Commission and it has jurisdiction over the parties and this claim. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employer-employee relationship existed between the defendant-employer and the plaintiff at all relevant times herein.
3. PMA Insurance Group provided defendant-employer with workers' compensation coverage at all relevant times herein.
4. Plaintiff filed a Form 33 seeking benefits related to a May 23, 2003, injury at work.
5. Defendants denied this claim by filing a Form 61 Denial ofWorkers' Compensation Benefits.
6. A Pre-Trial Agreement was submitted as Stipulated Exhibit 1, a complete set of pre-May 23, 2003, and post-May 23, 2003, medical records for treatment of plaintiff was submitted as Stipulated Exhibit 2, copies of electronic correspondence between plaintiff and defendant-employer were submitted as Stipulated Exhibit 3, and Industrial Commission Forms and Pleadings were submitted as Stipulated Exhibit 4.
 * * * * * * * * * * * EVIDENTIARY RULING
Prior to the hearing before the Deputy Commissioner, defendants had filed a Motion for Attorney's Fees and Additional Costs that were incurred as a result of plaintiff's requests for continuance. The Deputy Commissioner took this matter under advisement and subsequently denied defendants' Motion in the September 24, 2005, Opinion and Award. The Full Commission affirms that ruling.
 * * * * * * * * * * *
Based upon all the competent evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was forty-three years old. He obtained a high school diploma and completed additional courses in business and real estate. Plaintiff also had experience as an insurance agent in the 1980's. In or about 1990, plaintiff began receiving disability benefits as the result of a neck injury. However, in the months immediately preceding May 2003, plaintiff was having no significant back problems.
2. On April 28, 2003, plaintiff began employment as a field representative for defendant-employer. Plaintiff's job duties entailed traveling to various small businesses in his region and selling memberships for defendant-employer. Initially, plaintiff was paid a draw against future commissions.
3. On May 23, 2003, while making a sales call, plaintiff slipped and fell, landing on his buttocks and sustaining a compensable injury.
4. On May 27, 2003, plaintiff presented to Dr. Mark Jaben at Haywood Regional Medical Center Emergency Room (hereinafter "Haywood Regional"). Medical Records from Haywood Regional show that plaintiff provided a history of having slipped and fallen three days prior "striking his right buttock," with a chief complaint of back pain. Plaintiff testified at the hearing before the Deputy Commissioner that he had thought that he would heal but his pain grew progressively worse. Medical records from the May 27, 2003, visit show that physical examination revealed tenderness over the right buttock area but that examination of the back was "really nontender."
5. On May 29, 2003, plaintiff presented to Dr. Edward Lesesne, a family practitioner, at Midway Medical Center. Dr. Lesesne recorded plaintiff's history: "He slipped, his feet went out from under him and he landed on his buttocks area." Dr. Lesesne noted that plaintiff's pain was in the right posterior buttocks area. Examination revealed, "He moves his back well." Dr. Lesesne diagnosed a right buttock contusion and noted possible nerve irritation.
6. Dr. Lesesne released plaintiff to return to full duty work and advised plaintiff to return if he had any further problems. Dr. Lesesne opined that plaintiff would continue to improve and suffer no long-term disability.
7. Defendants provided payment of initial medical treatment immediately following the May 23, 2003, injury and plaintiff returned to his regular position with defendant-employer.
8. In early June 2003, plaintiff slipped and fell outside a convenience store, landing on his back and elbow. This accident was not work-related. On June 9, 2003, plaintiff sought treatment at Harris Medical Center in Sylva, North Carolina, where he complained of an injury to his left low back.
10. On June 19, 2003, plaintiff sought treatment with Haywood Regional Medical Center emergency room for his back condition, complaining of low back pain with radiation into his leg. Plaintiff indicated that he had experienced back problems for several weeks and that his pain had increased over the past three days.
11. On June 25, 2003, plaintiff presented to Dr. Lesesne, who diagnosed a contusion and strain of the back. Dr. Lesesne noted that plaintiff had been to both the emergency room in Sylva and the emergency room at Haywood Regional since his second fall.
12. Plaintiff returned to Dr. Lesesne on August 1, 2003, with complaints of continued pain in the low back area. Dr. Lesesne opined that plaintiff's August 1, 2003, complaints were related to the June 2003 incident, which was not work-related and that plaintiff had degenerative back disease aggravated by the June 2003 fall. In his deposition testimony, Dr. Lesene again opined that the symptoms for which he treated plaintiff in June and August 2003 related to plaintiff's June 2003 non work-related fall.
13. Because of his continuing back pain and the considerable amount of driving required by his job, plaintiff had increasing difficulty performing his job with defendant-employer in June and early July 2003. Plaintiff continued to work for defendant-employer until he was terminated effective August 7, 2003. The reason cited for his termination was falsifying production records. As indicated in documents supplied by defendants, plaintiff's last paycheck in the amount of $142.00 was for the pay period ending July 5, 2003.
14. After his termination by defendant-employer, plaintiff inspected buildings for insurance companies on a periodic basis and was paid $15.00 per inspection. Plaintiff's back pain limited the number of inspections he could do and the evidence of record does not contain a complete accounting of the compensation plaintiff received for this work.
15. At the hearing before the Deputy Commissioner, Stuart Kordonowy, a chiropractor with whom plaintiff treated for complaints of back pain beginning in September 2003, testified. Dr. Kordonowy testified that plaintiff advised him that he had suffered a fall at work on May 23, 2003, and a subsequent fall in June 2003.
17. Dr. Kordonowy opined that plaintiff's low back problems were related to the May 2003 work-related incident. Dr. Kordonowy's opinion was based on plaintiff's comments to him, as well as his review of certain x-rays and MRI reports but not any of the medical records that were taken at the time of the May work-related incident.
18. Plaintiff presented to Dr. James Hoski, an orthopedic surgeon of Spine Carolina, on December 24, 2003, with complaints of left-sided low back and left anterior thigh pain. Dr. Hoski referred plaintiff to Dr. Laura Fleck, a neurologist.
19. On January 2, 2004, plaintiff presented to Dr. Fleck with complaints of low back, left anterior thigh and chronic neck pain. As recorded in the office notes, plaintiff advised Dr. Fleck that he had suffered an injury at work on May 23, 2003, when he experienced "the onset of severe left-sided low back pain that progressively increased and extended into the left lower extremity." From the record, it is not clear when plaintiff advised Dr. Fleck that he had suffered a fall in June 2003. Dr. Fleck diagnosed plaintiff with mechanical low back pain of facetal origin and sacral dysfunction and restricted plaintiff to sedentary work, with directions to avoid prolonged bending and stooping and long periods in a fixed position. Dr. Fleck has consistently recommended that plaintiff participate in the functional restorative program offered by Spine Carolina, and plaintiff has indicated his desire to participate in that program. Dr. Fleck last treated plaintiff on September 23, 2004.
20. In her medical record of July 23, 2004, and in her deposition, Dr. Fleck opined to a reasonable degree of medical certainty that plaintiff's ongoing low back pain was causally related to his fall of May 23, 2003. The Full Commission finds Dr. Fleck's testimony and opinion to be credible and further finds that plaintiff's ongoing low back pain radiating into his legs is causally related to his compensable injury.
21. Although Dr. Lesesne, a family practitioner who had only seen plaintiff on three occasions, opined that plaintiff's August 2003 complaints were not work-related, the Full Commission gives greater weight to the opinions of Dr. Fleck, a board certified neurologist who devotes her practice to evaluating and managing conservative spine care problems primarily related to pain and Dr. Kordonowy, a chiropractor who specifically treated plaintiff for back pain. Both Dr. Fleck and Dr. Kordonowy opined that plaintiff's ongoing low back pain was causally related to his fall of May 23, 2003.
22. From the competent evidence of record, the Full Commission finds that plaintiff had worked four weeks at the time of his work-related injury on May 23, 2003, and that he was paid $1,450.00 for this work. During his employment with defendant-employer, plaintiff was paid a total of $4,011.00 over a ten-week period that ended on July 5, 2003. Although plaintiff may have worked after July 5, 2003, the record does not indicate he received any further compensation. Although the record contains information about earnings of other employees of defendant-employer, the Full Commission finds those figures vary so widely as to offer little assistance in the calculation of plaintiff's average weekly wage. Thus, the Full Commission finds that pursuant to N.C. Gen. Stat. § 97-2(5), using the fifth method of calculation, the method of dividing the earnings during the period of employment by the number of weeks and parts thereof provides a result fair and just to both parties. Under this method, plaintiff's total income yields an average weekly wage of $401.10 and a corresponding compensation rate of $267.40.
 * * * * * * * * * * *
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. In order to establish a compensable injury to the back, the employee must prove that the disabling back injury arose out of and in the course of the employment and was the direct result of either an injury by accident or a specific traumatic incident of the work assigned. N.C. Gen. Stat. § 97-2(6); Richards v. Townof Valdese, 92 N.C. App. 222, 224, 374 S.E. 2d 116, 118 (1988),disc. review denied, 324 N.C. 324 N.C. 337, 378 S.E. 2d 799 (1989). In the present case, plaintiff suffered a compensable injury by accident to his back on May 23, 2003, when he slipped and fell during a sales call. N.C. Gen. Stat. § 97-2(6).
2. Where for exceptional reasons, the manner of calculating plaintiff's average weekly wage according to the first four methods under N.C. Gen. Stat. § 97-2(5) would be unfair, either to the employer or employee, such other method of computing average weekly wages may be resorted to as will most nearly approximate the amount which the injured employee would be earning were it not for the injury. The method of dividing the earnings during the total period of employment by the number of weeks and parts thereof provides a result fair and just to both parties under the fifth method of calculation. Under this method, plaintiff's total income yields an average weekly wage of $401.10, with a corresponding compensation rate of $267.40. N.C. Gen. Stat. § 97-2(5).
3. After defendant-employer terminated plaintiff's employment, plaintiff worked on a contract basis performing insurance inspections, unrelated to defendant-employer, as he was physically able. Plaintiff is entitled to two-thirds of the difference between his pre-injury wages and his current wages for the period from August 7, 2003, for a period not to exceed 300 weeks from the date of injury. N.C. Gen. Stat. § 97-30.
5. As a result of his May 23, 2003, injury by accident, plaintiff is entitled to have defendants pay for all related medical expenses incurred or to be incurred for so long as such evaluations, examinations and treatments may reasonably be required to effect a cure, give relief and will tend to lessen the period of plaintiff's disability. Dr. Fleck is designated as plaintiff's authorized treating physician. If recommended by Dr. Fleck, plaintiff is entitled to participate in the functional restorative program at Spine Carolina. N.C. Gen. Stat. § 97-25.
 * * * * * * * * * * *
Based upon the foregoing Stipulations, Findings of Fact and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay to plaintiff temporary partial disability benefits equal to two-thirds of the difference between his pre-injury wages and wages actually earned thereafter beginning August 7, 2003, and continuing until plaintiff returns to work at an average weekly wage greater than $401.10 for a period not to exceed 300 weeks from the date of injury. Plaintiff shall provide defendants with a complete and accurate accounting of all earnings from August 7, 2003, to the present and continuing throughout the period that he receives temporary partial disability benefits.
2. Defendants shall pay medical expenses incurred or to be incurred by plaintiff as a result of his compensable injury of May 23, 2003, as are reasonably necessary to effect a cure, provide relief, or lessen the period of disability. Dr. Fleck is designated as plaintiff's authorized treating physician. If recommended by Dr. Fleck, plaintiff is entitled to participate in the functional restorative program at Spine Carolina.
3. A reasonable attorney's fee of twenty-five percent (25%) of the compensation awarded herein is approved for plaintiff's counsel, commencing from the date that her representation of plaintiff began. For compensation having accrued, this fee shall be deducted from the amounts due plaintiff and paid directly to counsel for plaintiff, with counsel for plaintiff receiving every fourth check thereafter.
This the __ day of July 2006.
 S/_____________ PAMELA T. YOUNG COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER